IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE TWO MEN AND A TRUCK LITIGATION          Consolidated Case No.
                                              5:16-CV-05255

### MEMORANDUM OPINON AND ORDER

Prior to the entry of the Court's Order (Doc. 36) consolidating case numbers 5:16-CV-05255, 5:16-CV-05256, 5:16-CV-05257, and 5:16-CV-05258, Defendant TMT Arkansas, Inc. ("TMT") had filed Motions for Partial Summary Judgment in each case. Now that the cases have been consolidated, all four Motions have been refiled in the Consolidated Case, 5:16-CV-05255. *See* Docs. 32, 37, 38, and 39. The Motions are identical, in that they all request partial summary judgment of Counts I and II of each Plaintiff's Amended Complaint. Count I is a claim for overtime compensation under the Fair Labor Standards Act ("FLSA"), and Count II is the same claim, but made under the Arkansas Minimum Wage Act ("AMWA"). TMT's argument on summary judgment is that Counts I and II should be dismissed as to all four Plaintiffs because the federal motor-carrier exemption, codified at 29 U.S.C. § 213(b)(1), applies to Plaintiffs' work for TMT and precludes their FLSA and AMWA claims for overtime compensation.[1]

In the following Order, the Court will rule on the issue of whether the motor-carrier exemption applies, and in so ruling, will dispose of all four Motions for Partial Summary Judgment. The following documents were considered: (1) TMT's Briefs, Affidavits, and

---

[1] According to Ark. Code Ann. § 11-4-211(d), the AMWA's overtime provisions "shall not apply to any employee exempt from the overtime requirements of the federal Fair Labor Standards Act . . . ."

Statements of Facts filed in support of each of the four Motions (Docs. 33, 34, and 35 in 5:16-CV-05255, 5:16-CV-05256, 5:16-CV-05257, and 5:16-CV-05258); Plaintiffs' Consolidated Response in Opposition, Consolidated Statement of Facts, and Consolidated Brief in Support (Docs. 43, 44, 45 in 5:16-CV-05255); and TMT's Consolidated Reply (Doc. 49 in 5:16-CV-5255).

For the reasons explained herein, TMT's Motions for Partial Summary Judgment are **GRANTED**, and Counts I and II are **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Plaintiffs Robert Ennis, Haskell Fuller, IV, Lonnie Harris, and Micah Lindsay are former employees of TMT, an Arkansas-based moving company. According to the Amended Complaint that was filed in each of their cases, TMT failed to pay them overtime compensation and made unlawful deductions from their paychecks, which reduced their salaries below the minimum wage and violated both the FLSA and the AMWA. Plaintiffs brought their claims against TMT in state court, and all four cases were removed to this Court on September 16, 2016. On December 1, 2016, the Court issued an Order (Doc. 36) consolidating the four cases *sua sponte*, and finding that they involved the same Defendants,[2] the same counsel for both sides, and the same or similar background facts and causes of action.

Plaintiffs do not dispute that TMT is a "motor carrier," as that term is defined in 49 U.S.C. § 13102(14), and Plaintiffs also agree that TMT is engaged in the business of

---

[2] At that time, there were two Defendants in the case: TMT and its franchisor, Two Men and a Truck International, Inc. ("TMTI"). On January 9, 2017, Plaintiffs moved to dismiss TMTI without prejudice, *see* Doc. 50, and the Court granted the motion the following day by text order, leaving TMT as the only Defendant in this action.

offering inter- and intrastate moving services to the general public, under the authority of the United States Department of Transportation. *See* Plaintiffs' Consolidated Statement of Facts, Doc. 44, p. 1. Plaintiffs further agree that when they worked for TMT, they were classified as "movers" or "drivers" or both.[3]  (Doc. 44, p. 1).  Their main point of contention on summary judgment is that their work as "movers" can only be considered exempt if it had some effect on the safe operation of trucks in interstate commerce.  Plaintiffs believe their work had no such effect because TMT never provided them with training on how to load trucks safely.

TMT, on the other hand, believes the motor-carrier exemption applies to bar all four Plaintiffs' overtime claims, and Plaintiffs' work as drivers and movers should qualify for the exemption.  The text of the exemption, found at 29 U.S.C. § 213(b)(1), states as follows:

> **(b) Maximum Hour Requirements** The provisions of section 207 of this title [regarding overtime compensation under the FLSA] shall not apply with respect to—
>
> > (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49.

---

[3] Ennis was employed by TMT from June 23, 2014 to July 26, 2016 as a driver, operating box trucks that each had a gross vehicle weight of over 10,000 pounds. *See* 5:16-CV-05255, Doc. 35, p. 2. Fuller was employed by TMT as a mover from August 11, 2014 to October 22, 2014, and again from March 29, 2016 to July 26, 2016. *See* 5:16-CV-05256, Doc. 35, p. 2.  The job of "mover" involved safely moving, packing, and unpacking customers' belongings, and assisting drivers with pre- and post-trip inspections and with backing up or maneuvering trucks in tight situations. *Id.* Harris was employed by TMT as a mover from April 4, 2016 to April 20, 2016, and also as a driver from April 21, 2016 to August 2, 2016. *See* 5:16-CV-05257, Doc. 35, p. 2.  Finally, Lindsay was employed by TMT as a mover from April 14, 2016 to September 22, 2016. *See* 5:16-CV-05258, Doc. 35, p. 2.  Plaintiffs "do not dispute" the above job descriptions, which were provided by TMT. *See* Plaintiffs' Consolidated Statement of Facts, Doc. 44, p. 2.

*Id.* Turning to 49 U.S.C. § 31502, it provides that "[t]he Secretary of Transportation may prescribe requirements for—(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."  Reading these two statutes together, it appears that the Secretary of Transportation retains the authority to determine the maximum number of hours of service that certain employees of motor carriers may perform.  Accordingly, the work performed by these employees is not subject to the overtime requirements of the FLSA. *See Williams v. Cent. Transp. Int'l, Inc.*, 830 F.3d 773, 778 (8th Cir. 2016) ("[I]f an employee spends a substantial part of his time . . . participating in or directing the actual loading of a motor vehicle common carrier's trailers operating in interstate or foreign commerce, the Secretary of Transportation has the authority to regulate that employee's hours of service and the [Motor Carrier Act] Exemption applies, regardless of the employee's precise role in the loading process.").

The regulations that define the motor-carrier exemption are found at 29 C.F.R. § 782.2.  These regulations explain that the applicability of the exemption "depends both on the class to which the employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a).  Exempt employees are classified as "driver[s], driver's helper[s], loader[s], or mechanic[s]" whose work "directly affect[s] the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act."  29 C.F.R. § 782.2(b)(2). The regulations caution that when "determining whether an employee falls within such an exempt category, neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of his job." *Id.* (internal citations omitted).

4

Plaintiffs have conceded that the exemption applies to the work of driving a moving truck for TMT. *See* Plaintiffs' Consolidated Brief, Doc. 45, p. 12 ("The Plaintiffs concede that TMT is a Motor Carrier under 49 U.S.C. 13102 and concede that the portion of their employment actually driving a truck may be exempt . . . ."). The Court will therefore rule in favor of TMT as to Plaintiff Ennis, whose pay records indicate that 80-90% of his hours on the job were spent driving a moving truck. *See* Ennis's Time Sheets, Doc. 43-4, pp. 27-101; *see also* 29 C.F.R. § 782.2(b)(3) (explaining that exempt work will not qualify for overtime compensation unless the number of hours spent doing that work is "so trivial, casual, and insignificant as to be de minimis").

As for the remaining Plaintiffs, Harris worked as both a driver and a mover, and Fuller and Lindsay worked only as movers. Plaintiffs agree that the driving portion of Harris's time should be exempt, but they disagree that their moving duties should also be exempt. Such work would be exempt only if it were classified as "loading" under the regulations:

> A "loader," as defined for Motor Carrier Act jurisdiction, is an employee of a carrier subject to section 204 of the Motor Carrier Act (other than a driver or driver's helper as defined in §§ 782.3 and 782.4) whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

29 C.F.R. § 782.5(a) (internal citations omitted).

Plaintiffs focus on the second half of the definition of a "loader" in arguing that their moving work at TMT was not a "safety affective activity" that would qualify for exemption. They also refer to their time sheets as evidence that they were paid to perform several different jobs in addition to loading/moving, apparently in an attempt to show that their loading work was *de minimis* in comparison to the rest of the time they spent working for TMT.

In reply to Plaintiffs' arguments, TMT cites to the same time sheets and asks the Court to carefully examine them in order to test the validity of Plaintiffs' contentions. TMT insists that the time sheets plainly demonstrate that only a small amount of Plaintiffs' time was spent doing non-exempt tasks, i.e., non-driving or non-loading duties. In addition, TMT presents other records to prove that Plaintiffs did, in fact, receive at least some formal training on how to safely pack a truck. Below, the Court will consider the parties' dueling arguments on summary judgment, beginning first with an examination of the appropriate legal standard.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter

of law.  *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).  Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III.  DISCUSSION

The sole issue on summary judgment is whether the federal motor-carrier exemption applies to preclude Plaintiffs' claims for overtime compensation under the FLSA and AMWA.  Plaintiffs do not dispute that TMT qualifies as a motor carrier, due to the fact that it engages in interstate commerce and utilizes trucks weighing in excess of 10,000 pounds.[4]  As previously noted, Plaintiffs also do not dispute the fact that TMT drivers

---

[4] Although this point was not argued by Plaintiffs in their briefing, the Court observes that the relative number of interstate moves—as compared to intrastate moves—that each Plaintiff personally participated in is immaterial, as "[t]he Motor Carrier Act exemption applies to a driver who performs no interstate driving if the driver is 'subject to be[ing]

qualify for the exemption, which means that Ennis's overtime claims are appropriate for summary judgment, as most of his working hours were spent driving a truck. The remaining Plaintiffs dispute that they qualify under the exemption as "loaders" whose work directly affects "the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.5(b). They believe that material disputes of fact exist as to: (1) whether enough of their time was spent loading trucks—as opposed to time spent doing clearly non-exempt tasks—so as to qualify them as "loaders" under the exemption; and (2) whether their work loading trucks should be considered "safety affecting activities" that qualify for the exemption, given their argument that they never received training from TMT on how to safely load a truck.

The Court rejects Plaintiffs' first argument that their weekly job duties involved a *de minimis* amount of time spent either driving or loading freight. Plaintiffs' Consolidated Brief in opposition to summary judgment claims that Plaintiffs' "time sheets clearly show that they performed many other tasks aside from simply loading and driving trucks, for which such jobs were separately accounted for on an hourly basis." (Doc. 45, pp. 5-6). The Court takes from this statement that Plaintiffs agree their time sheets constitute the best evidence of how they actually spent their time at work. In examining these time sheets, it appears all hours are grouped into categories labeled "shop time,"[5] "mover hourly," "driver

---

assigned an interstate trip' and there is a reasonable expectation of such an assignment." *Alexander v. Tutle and Tutle Trucking, Inc.*, 834 F.3d 866, 870 (8th Cir. 2016) (quoting *Starrett v. Bruce*, 391 F.2d 320, 323–24 (10th Cir. 1968)). Here, it appears Plaintiffs do not dispute that they were, at all times during their employment, either actively participating in interstate moves or subject to being assigned to perform interstate moves.

[5]  Neither party has informed the Court what tasks are involved in "shop time."

hourly," "packer hourly," and "training hourly." *See* Doc. 43-4. As previously noted, 80-90% of Ennis's hours were logged in the "driver hourly" category. *See id.* at pp. 27-101. Most of Harris's hours were also spent driving—approximately 70%—with less than 20% billed as "mover hourly," and the remaining 10% billed as "shop time" or "packer hourly." *Id.* at pp. 102-110. Fuller's time sheets show that approximately 80% of his hours were billed as "mover hourly," only 15% of his hours were billed as "shop time," and the remaining hours were billed as "packer hourly." *Id.* at pp. 18-26. Finally, between 80-90% of Lindsay's time was billed as "mover hourly," about 10% was "shop time," and the rest of his hours were spent either training or packing.

Assuming for the sake of argument that the only possible exempt work at TMT would be reflected in the "mover hourly" or "driver hourly" categories, the facts are undisputed that all four Plaintiffs devoted 80% or more of their hours to these two categories. Considering this, the only remaining issue for the Court to consider is whether Harris, Fuller, and Lindsay's "mover hourly" work should qualify for the motor-carrier exemption.

These Plaintiffs contend that, although they were employed by a qualifying "motor carrier" and loaded freight into box trucks that operated in interstate commerce, their loading activities should not qualify for exemption because they routinely loaded trucks with either no recognition of, or no regard for, the impact that their work had on the safe operation of moving trucks on public roadways. In particular, they maintain that TMT never provided them with instructions on how to balance, place, distribute, or secure the freight so as to insure the safe operation of the trucks on the road. Fuller affirmed in an affidavit that his supervisors instructed him "to box up the items and get them on the truck as

9

quickly as possible," but failed to provide him with further instructions. *See* Doc. 43-2, p. 3. He also stated: "At no time during my employment was I trained in or called upon to perform any safety related tasks for my employer." *Id.*

TMT disputes these claims and submits documentary evidence to prove that all Plaintiffs were provided training on how to safely load a truck. The proof comes in the form of a number of agenda sign-in sheets, which contain Plaintiffs' signatures and which correspond to various safety training sessions. *See* Doc. 49-1. TMT has also attached "Move Observation" forms, *see* Doc. 49-2, pp. 29-32, which appear to be on-site evaluations of the movers' job performances. Each "Move Observation" form indicates whether the mover being evaluated observed TMT's safety protocols, including packing the truck properly, lifting heavy loads using proper body mechanics, and maintaining walkways free of hazards. *See id.* At least one "Move Observation" form was completed for Ennis, *id.* at p. 28, for Fuller, *id.* at p. 29, and for Lindsay, *id.* at p. 31.

All of this evidence collectively establishes that Plaintiffs were, in fact, provided with at least some training on how to safely load trucks, and that TMT periodically evaluated Plaintiffs in order to verify that they were adhering to certain safety standards when performing these tasks. Plaintiffs' statements claiming that they were never provided with any such training or evaluation are directly contradicted by the evidence, and will be disregarded. As the Eighth Circuit has previously noted:

> [A] properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.

10

*Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (internal citations and quotation marks omitted).

Though the Court believes the evidence is undisputed that Plaintiffs received formal safety training and performed their loading duties with full knowledge of, and regard for, the safe operation of the trucks on the roadway, the Court believes that if Plaintiffs had only received informal, periodic, or even minimal safety training, it would have been enough to qualify their work for exemption, due to the character of the work itself. A case that illustrates this point is *Williams v. Central Transport International, Inc.*, 830 F.3d 773 (8th Cri. 2016). According to the facts of the case, Williams was classified as a "switcher" whose daily work involved loading trailers destined for interstate line-haul operations and for deliveries in and around the St. Louis area. The job featured such physical tasks as "balancing trailer loads, installing decks to safely stack freight 'high and tight,' bracing top-heavy freight, loading hazardous materials, and so forth." *Id.* at 777. Williams' argument on appeal was that the trial court erred in finding that he qualified for the motor-carrier exemption—not because his everyday work activities involved something *other than* loading freight on trucks bound for interstate travel—but because he had little prior experience doing such work, was only provided with initial training and nothing more, and was monitored by supervisors periodically, but was never "constantly supervis[ed]." *Id.*

Indeed, "Williams acknowledge[d] that loaders are exempt from the FLSA but argue[d] the district court erred in classifying *him* as a loader" because of circumstances personal to him. *Id.* (emphasis in original). He, like the Plaintiffs in the case at bar, did not believe his work directly affected the safety of motor carrier operations because his lack

of training and direct supervision made it impossible for him to exert "'judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways . . . will not be jeopardized,' as DOL regulations require." *Id.* (quoting 29 C.F.R. § 782.5(a)).

The Court of Appeals affirmed the trial court and rejected Williams' arguments, finding that "the governing standard" is not the worker's level of judgment, discretion, or relative supervision. *Id.* at 778. Rather, the focus of the analysis should be on the work itself—"the physical act of loading freight in a safe manner," which has "an undeniable, direct effect on safety." *Id.* (quotation marks and citations omitted). The Court explained that "'placing freight in convenient places in the terminal [or] checking bills of lading'" *would not qualify* for the exemption, but by contrast, Williams' work of "'distributing and making secure heavy or light parcels of freight on board a truck'" *did qualify* for the exemption. *Id.* at 777 (quoting *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674 (1947)).

With the *Williams* opinion in mind, the Court rejects Plaintiffs' assertion that the work they did was more akin to "tossing items into the back of a truck," (Doc. 45, p. 12), rather than "distributing and making secure heavy or light parcels of freight," *Williams*, 830 F.3d at 777 (quoting *Levinson*, 330 U.S. at 674). The undisputed evidence reveals that Plaintiffs' duties as "loaders" had a direct effect on highway safety and therefore came within the regulatory authority of Secretary of Transportation. The evidence also establishes that Plaintiffs were provided with formal safety training, exercised a significant degree of discretion on how they loaded their trucks—in that they were not constantly

12

supervised, but routinely loaded trucks as they saw fit—and they were periodically evaluated to ensure adherence to proper loading and safety techniques. Their work bears no resemblance to the sorts of loading jobs that would be considered non-exempt, such as placing freight in convenient places, or checking bills of lading. Summary judgment will enter in TMT's favor as to Counts I and II of the Amended Complaint, and Plaintiffs' overtime claims will be dismissed with prejudice due to the application of the motor-carrier exemption.

## IV. CONCLUSION

Accordingly, Defendant TMT Arkansas, Inc.'s Motions for Partial Summary Judgment (Docs. 32, 37, 38, and 39) are **GRANTED**, and Counts I and II of the Amended Complaint in each of the four cases are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 24th day of February, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE